# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN TODD WALKER, :
 :
 Plaintiff, : CIVIL ACTION
 :
 v. : NO. 10-02378
 :
MORGAN STANLEY SMITH BARNEY LLC, :
 :
 Defendant. :

**MEMORANDUM OF LAW**

**Joyner, J.** **April 27, 2011**

Presently before the Court is Defendant Morgan Stanley Smith Barney LLC's Motion to Compel Arbitration. (ECF No. 12.) For the following reasons, the motion shall be granted.

## I. BACKGROUND

Plaintiff Stephen Todd Walker, an investment counselor, brings this action against his former employer, Defendant Morgan Stanley Smith Barney ("MSSB"). Walker alleges that on May 5, 2010, he was placed on an involuntary paid leave of absence, escorted from the MSSB building, and denied the opportunity to gather from his office his personal computers, printers, documents, and client information. Walker's employment with MSSB was terminated on May 13, 2010.

On May 19, 2010, Walker filed a complaint in state court alleging conversion (Count I), tortious interference with existing and prospective contractual relationships (Counts II & III), tortious interference with business relations based on

MSSB's failure to file a Form U-5 (Count IV),[1] and violations of Pennsylvania's Inspection of Employment Records Law (Count V). Walker sought injunctive relief to recover "all his personal belongings, including files, computers, laser jet printers, computer discs, all information stored on the computers of his assistants . . . , all of Plaintiff's client information and his entire database of prospective client information . . . , and all materials relating to his book." (Compl. at 6, 7, 8, ECF No. 1.) Walker also sought an order requiring MSSB to "provide Plaintiff with access to all information regarding his clients and permit him to continue to service those clients." (Id.) The state court issued a Rule to Show Cause order temporarily enjoining MSSB from "engaging in any efforts to interfere with Plaintiff's contact with and servicing of his clients or to complete the required chapters of his book." (ECF No. 13 at 2.)

MSSB removed the case to federal court on May 20, 2010, and filed the instant Motion to Compel Arbitration, contending that Walker must be required to arbitrate his claims in accordance with an agreement providing for the arbitration of "any controversy or claim arising out of or in any way relating to Employee's employment with MSSB or termination thereof." (ECF No. 12, Ex. A ¶ 9(a).) MSSB asserts that it gathered and

---

[1] As MSSB filed Plaintiff's Form U-5 on May 17, 2010, Count IV may be dismissed as moot.

2

returned Walker's personal belongings, but maintains that Walker is not entitled to employment-related materials, such as client information. MSSB further argues that Walker has failed to comply with the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure for Industry Disputes.

Walker responded in opposition that "[t]he relief sought by Plaintiff in this action is limited to the retrieval of his <u>personal property</u> that was reposited in his office at the time of his termination" and that such claims "are completely unrelated to his work as a broker or his employment with MSSB." (ECF No. 13 at 3.) As such, Walker argues, his claims are not arbitrable. MSSB filed a reply asserting that all truly personal items have been returned to Walker and that the remainder of Plaintiff's so-called "personal" property is in fact employment-related. The motion has now been fully briefed and is ripe for disposition.

## II. DISCUSSION

The enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., established "a strong federal policy in favor of the resolution of disputes through arbitration." <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 263 (3d Cir. 2003) (citing <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).[2] However, because "arbitration is a matter of

---

[2] The Supreme Court of Pennsylvania has articulated a similar policy favoring arbitration. See, e.g., <u>Fastuca v. L.W. Molnar & Assocs.</u>, 10 A.3d 1230, 1245 (Pa. 2011) ("As our Court has observed on repeated occasions, the settlement of disputes by arbitration is favored by the public policy of this

3

contract[,] a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). As such, when considering whether a party may be compelled to arbitrate, we must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 527 (3d Cir. 2009). In light of the federal policy favoring arbitration, we apply a "presumption of arbitrability" to the second question: "'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. at 524 (quoting AT&T Techs., 475 U.S. at 650); see also id. at 528 (finding that the presumption applies to the question of the scope of the agreement, but probably not to the threshold question of whether an agreement exists between the parties). "This presumption of arbitrability is particularly applicable where the arbitration clause at issue is broad." Battaglia v. McKendry, 233 F.3d 720, 725 (3d Cir. 2000). The Third Circuit has found that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions,

---

Commonwealth and is, therefore, encouraged by our courts and by statute.").

they are normally given broad construction." Id. at 727. Similarly, the Supreme Court has characterized as "broad" an arbitration clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to" the parties' agreement. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967); see also Flightways Corp. v. Keystone Helicopter Corp., 331 A.2d 184, 185 (Pa. 1975) (finding with reference to a clause calling for arbitration of "'[a]ny controversy or claim arising out of or relating to this Agreement'" that "[b]roader language would be difficult to contrive").

Here, the parties do not dispute that they entered into a valid arbitration agreement; at issue, however, is whether it covers Walker's claims. The arbitration agreement is contained within the parties' Financial Advisor/Investment Representative Retention Agreement (the "Agreement") and reads in pertinent part as follows:

> Any controversy or claim arising out of or in any way relating to this Agreement or any benefits or payments available and/or due under this Agreement, as well as any controversy or claim arising out of or in any way relating to Employee's employment with MSSB or termination thereof, including, but not limited to common law claims for breach of contract or tort, wage and hour claims, and/or statutory discrimination claims (individually and collectively referred to herein as "Covered Claims"), will be resolved by final and binding arbitration before the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes.

5

(ECF No. 12, Ex. A ¶ 9(a).)[3]  Accordingly, if Walker's claims "aris[e] out of or in any way relat[e] to" the Agreement, Walker's employment with MSSB, or the termination of Walker's employment, we must compel Walker to arbitrate his claims pursuant to the arbitration agreement.

Walker argues that his claims concern his personal property and therefore "do not implicate any customer or securities agency and [are] completely unrelated to any issue of Plaintiff's job performance qua broker." (ECF No. 13 at 9 (citing Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1167-68 (8th Cir. 1984)).) By contrast, MSSB argues that Walker includes employment-related material in his definition of "personal belongings" and that such material necessarily arises out of and relates to Walker's employment.

Considering that the arbitration clause at issue here is particularly broad – requiring, as it does, arbitration of any claims "arising out of or in any way relating to" Walker's employment, termination, or the Agreement – we find that Walker's

---

[3] Rule 13200 of FINRA's Code of Arbitration Procedure for Industry Disputes requires that

> a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among
> 
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.

FINRA Rule 13200(a).

claims fit comfortably within the scope of the parties' arbitration agreement.

Despite Walker's characterization of his claims as relating solely to "personal belongings," Walker's claims clearly concern employment-related material. Indeed, it is apparent just from a reading of Walker's complaint and subsequent filings that he classes among his "personal belongings" the following employment-related materials: client information, information stored on his assistants' computers, and a database of prospective client information. Even Walker's "personal" computer equipment evidently contains client-related information. (See Compl. ¶ 7, ECF No. 1 ("Plaintiff's client information and his database of prospective client information were kept in files in his office, on the hard drives of five computers he personally bought and brought to his Morgan Stanley offices, on computer discs and external hard drives he personally bought and brought to his Morgan Stanley offices . . . .").) Walker's claims seeking the return of such materials relate not only to the Agreement, which governs the parties' use and control of confidential and proprietary information, but also to Walker's employment generally. As such, Walker's claims are covered by the arbitration clause. We will, therefore, grant MSSB's motion and compel arbitration of Walker's claims in accordance with FINRA's Code of Arbitration Procedure for Industry Disputes.

We note that the FINRA Arbitration Code permits a party to seek temporary injunctive relief even regarding disputes required to be submitted to arbitration. See Rule 13804(a)(1) ("In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction."). In order to take advantage of this provision, however, the party seeking the temporary injunctive order "must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute in the manner specified under the Code." Rule 13804(a)(2). Even if we could treat Walker's complaint as a request for temporary injunctive relief, as a threshold matter we must decline to grant such relief because it appears that Walker has not filed a statement of claim as required by Rule 13804. Accordingly, because all of Walker's claims are subject to arbitration, we will dismiss this action without prejudice. See <u>Seus v. John Nuveen & Co.</u>, 146 F.3d 175, 179 (3d Cir. 1998) ("If all of the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it.").

**III. CONCLUSION**

For the reasons stated above, we will grant MSSB's Motion to Compel Arbitration and dismiss this action. An appropriate order follows.